UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

UNITED STATES OF AMERICA,

    Plaintiff,

v.

                                                            Case No. 2:20-cv-769-JLB-NPM

JOHN H. FARO,

    Defendant.
_____/

## ORDER

This matter comes before the Court on the United States' motion for summary judgment (Doc. 77), John H. Faro's response in opposition and cross-motion for summary judgment (Doc. 89), and the United States' response in opposition (Doc. 91). For the reasons set forth below, the United States' motion (Doc. 77) is **GRANTED in part**; the Court will enter judgment for the United States but reserves its decision on the amount of the judgment until the parties file their supplemental memoranda ordered herein. Mr. Faro's cross motion (Doc. 89) is **DENIED**.

## BACKGROUND

The United States brought this action against Mr. Faro to collect unpaid federal income tax liabilities for the 2004 through 2013 and 2015 tax years. (*See* Doc. 8). For each of these tax years, Mr. Faro, an attorney, filed tax returns

reporting that he owed federal income taxes.[1] In his deposition conducted for the instant case, Mr. Faro agreed that the amount of tax he reported on his tax returns was accurate, that he had "no way of challenging it," and that he is "not challenging it here." (Doc. 77-21 at 10). Mr. Faro also admitted in his response to requests for admissions that he has not fully paid his income taxes. (Doc. 77-6 at 2–11).[2]

The United States asserts that, as of June 9, 2023, Mr. Faro's tax liability for tax years 2004 through 2013 and 2015 is $543,247.52, plus interest and statutory additions until paid. (Doc. 77 at 2–4 & n.1). To substantiate this amount, the United States submitted the Declaration of Internal Revenue Service ("IRS") Advisor Grace Duplessis (Doc. 77-1), which was accompanied by (i) the Form 4340, Certificate of Assessments, Payments, and Other Specified Matters, for each of the tax years at issue (Doc. 77-2), and (ii) the INTST-D computation printouts used to compute the unpaid balance of the tax assessments, accrued interest, and statutory additions through June 9, 2023 (Doc. 77-3; *see* Doc. 77-1 at 6).

---

[1] (*See* Doc. 95-10 at 2 (Form 1040 for 2004); Doc. 95-2 at 2, 5 (Form 1040 for 2005); Doc. 95-3 at 3 (Form 1040 for 2006); Doc. 77-13 at 2 (Form 1040 for 2007); Doc. 95-4 at 2 (Form 1040 for 2008); Doc. 95-5 at 2 (Form 1040 for 2009); Doc. 95-6 at 2 (Form 1040 for 2010); Doc. 95-7 at 2 (Form 1040 for 2011); Doc. 95-8 at 2 (Form 1040 for 2012); Doc. 95-9 at 2 (Form 1040 for 2013); Doc. 77-20 at 3–4 (Form 1040 for 2015)).
   The amended complaint alleges that Mr. Faro "did not file a Form 1040 for the 2008 and 2009 tax years." (*See* Doc. 8 at 3). But Mr. Faro's 2008 and 2009 Form 1040s, stamped as received in 2011, are filed on the record. (*See* Doc. 95-4; Doc. 95-5). The amended complaint nonetheless plainly provided notice that the United States sought taxes and interest assessed for the 2008 and 2009 tax years (*see* Doc. 8 at 4), and Mr. Faro expressly does not dispute otherwise (*see* Doc. 89 at 4).

[2] Mr. Faro apparently omitted his answer as to tax year 2010, but admitted he had not fully paid his federal income taxes for the other tax years at issue. (*See id.*)

Mr. Faro asserts two affirmative defenses, both of which relate to the IRS's rejection of his "offer in compromise" for a substantially lesser amount than he owed. (*See* Doc. 72 at 4–8, 41–42). First, Mr. Faro contends he experienced financial hardship due to circumstances beyond his control, including the economic downturn in 2008, and the IRS's rejection of his offer in compromise was accordingly contrary to law and public policy. (*See id.* at 4–6). Second, Mr. Faro contends that the IRS discriminated against him based on his professional status as an attorney when it rejected his offer in compromise. (*See id.* at 7–8). The United States and Mr. Faro have filed cross-motions for summary judgment. (*See* Docs. 77, 89).

## LEGAL STANDARDS

Summary judgment is appropriate when "there is no genuine issue as to any material fact" and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). A "genuine" issue of material fact exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A fact is "material" if it is identified by the governing substantive law as an essential element of the claim. *See id.*

The initial burden is on the party moving for summary judgment to demonstrate that the nonmoving party lacks evidence to support an essential element of its claim. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). If the moving party has discharged its burden, "the non-moving party must then 'go beyond the pleadings,' and by its own affidavits, or by 'depositions, answers to

interrogatories, and admissions on file,' designate specific facts showing that there is a genuine issue for trial." *Jeffery v. Sarasota White Sox, Inc.*, 64 F.3d 590, 593–94 (11th Cir. 1995) (citing *Celotex*, 477 U.S. at 324).

In reviewing a motion for summary judgment, the Court views the evidence and reasonable inferences drawn from it in the light most favorable to the non-movant. *See Mize v. Jefferson City Bd. of Educ.*, 93 F.3d 739, 742 (11th Cir. 1996). But "[a] court need not permit a case to go to a jury…when the inferences that are drawn from the evidence, and upon which the non-movant relies, are 'implausible.'" *Id.* at 743 (citations omitted).

## DISCUSSION

### I. Mr. Faro's unpaid federal income tax liabilities

The government contends that no dispute of material fact exists as to its tax assessment and, therefore, the Court should reduce Mr. Faro's tax liabilities to judgment. (*See* Doc. 77). Mr. Faro does not dispute that he owes federal income taxes; he instead disputes the accuracy of the amount of the IRS's tax assessment. (*See* Doc. 77-6 at 2–11; Doc. 89 at 3–13, 20–23).

The Supreme Court has explained that "[a]n 'assessment' amounts to an IRS determination that a taxpayer owes the Federal Government a certain amount of unpaid taxes," and it "is entitled to a legal presumption of correctness." *United States v. Fior D'Italia, Inc.*, 536 U.S. 238, 242 (2002). In seeking to reduce the assessment to judgment, the government "must first prove that the assessment was properly made." *United States v. Stein*, 881 F.3d 853, 855 (11th Cir. 2018) (en banc)

4

(quoting *United States v. White*, 466 F.3d 1241, 1248 (11th Cir. 2006)) (internal quotation marks omitted).

To do so, the government may rely on the Certificates of Assessments, Payments, and Other Specified Matters, or Form 4340, as presumptive proof. *White*, 466 F.3d at 1248; *see United States v. Chila*, 871 F.2d 1015, 1018 (11th Cir. 1989) (maintaining that the "Certificate of Assessments and Payments" was "presumptive proof of a valid assessment") (citation and internal quotation marks omitted). If the government meets its burden, the burden then shifts to the taxpayer to prove the assessment is erroneous or arbitrary. *Stein*, 881 F.3d at 855 (quoting *White*, 466 F.3d at 1248); *see also Olster v. Comm'r of IRS*, 751 F.2d 1168, 1174 (11th Cir. 1985) ("The taxpayer has the burden of proving that the computational method used is arbitrary and without foundation.") (citation omitted).

Here, the government has submitted with its summary judgment motion a Form 4340 for each of the tax years at issue and maintains that the presumption of correctness applies to the IRS's assessment. (*See* Doc. 77 at 7–8; Doc. 77-2). The government seeks the taxes it has assessed—plus interest and (for tax years 2013 and 2015) penalties. (*See* Doc. 77 at 2 & n.1; Doc. 77-1 at 4-5).[3] The government has also submitted its INTST-D computation printouts calculating the amount that Mr. Faro owes for each tax year as of June 9, 2023. (*See* Doc. 77-3).

---

[3]   For tax years 2004 through 2012, the government states it is not seeking penalties and interest on penalties, because they were discharged in bankruptcy. (Doc. 77 at 2 n.1 (citing Mr. Faro's bankruptcy and adversary proceedings)).

5

Mr. Faro disputes the accuracy of the assessment. (*See* Doc. 89 at 3–13, 20–23). He presents two arguments.

First, Mr. Faro argues that the IRS in a separate proceeding suggested that Mr. Faro's tax returns did not accurately reflect his business expenses and that, as a result, the tax assessment "for the period of 2004 to 2015, inclusive, was inaccurate." (Doc. 89 at 3; *see id*. at 8–13). The sole evidence to which Mr. Faro points is a portion of his deposition taken in the bankruptcy adversary proceeding. (*See id*. at 3–4, 6, 8–9, 11, 20–21 (citing Doc. 85-1 at 85, lines 10 through 19 and/or 20). There, the government attorney asked Mr. Faro why certain business expenses claimed for two tax years—2011 and 2012—would be identical:

```
10    Q. Okay. Do you see on 3035, Part II, where you list
11    expenses for car and truck on line 9, for office expense on
12    line 18, and then other expenses on line 27?
13    A. Yes.
14    Q. Okay. You can compare this exhibit to Exhibit 9
15    if you'd like, but those amounts are the same to the dollar,
16    and the amounts on the following page are the same to the
17    dollar. Do you know why your expenses would have been
18    exactly the same –
19    A. No.
20    Q.-- for tax year 2011 and 2012?
```

(Doc. 85-1 at 85). From this portion of his deposition, which addresses his 2011 and 2012 tax returns, Mr. Faro asserts the IRS has suggested that his "tax returns for 2004-2015, in the aggregate, did not accurately reflect the amount of [Mr. Faro's] variable business expenses, and consequently, the IRS assessment of [Mr. Faro's] tax liability for the period 2004 to 2015, inclusive was inaccurate." (Doc. 89 at 3).

6

Mr. Faro, however, has failed to create a genuine issue of material fact. As an initial matter, Mr. Faro has ignored that the deposition continues, with Mr. Faro appearing to defend the accuracy of his 2011 and 2012 tax returns:

```
21    But you give this information to your accountant;
22   right, so he can prepare --
23    A.  Well, the office expense would have been – if
24   there was a rent, it would have been the same; if there was
25   a car expense, it would have -- maybe taking mileage, the
 1   insurance would be the same so --
 2    Q.  So the office expense was usually 2,400 every
 3   year?
 4    A.  A couple hundred dollars a month, yeah.
 5    Q.  Okay.  And your car and truck expense was usually
 6   5,500 every year?
 7    A.  Yeah, between the insurance and -- I based it on
 8   mileage.
```

(Doc. 85-1 at 85–86).

But even viewing the government attorney's questioning in the light most favorable to Mr. Faro—i.e., the government had some question as to the accuracy of what Mr. Faro reported on his 2011 and 2012 tax returns—Mr. Faro has made no effort in the instant case to address, let alone show, that the amount of taxes he would owe for those tax years would be ***lower***. (*See* Doc. 89 at 3–13). Indeed, Mr. Faro has not pointed to any record evidence to substantiate his business expenses or to rebut the accuracy of his tax liabilities for 2011 and 2012. *See, e.g., United States v. Stein*, 769 F. App'x 828, 832–33 (11th Cir. 2019) (reiterating taxpayer's burden in response to government's summary judgment motion and concluding taxpayer had "produced no substantial competent evidence to defeat summary judgment"). Nor has he pointed to any record evidence to substantiate his business

7

expenses or to rebut his tax liabilities for any of the other tax years at issue. Mr. Faro's reliance on this government-attorney's questioning as to his 2011 and 2012 tax returns accordingly does not create any genuine issue of material fact as to the other tax years' assessment or, as Mr. Faro suggests, the entirety of the assessment. *See, e.g., id.* (concluding taxpayer had failed to produce evidence establishing that the tax assessment was erroneous); *see also Amey & Monge, Inc. v. C.I.R.*, 808 F.2d 758, 762 (11th Cir. 1987) (rejecting taxpayer's argument that "the mere concession by the [IRS] that certain items were deductible following [its] original disallowance of substantially all deductions is proof of 'erroneous and arbitrary conduct by the [IRS]' with respect to the entire notice of deficiency").

Finally—and most importantly—Mr. Faro agreed at his deposition, taken in the instant case on March 23, 2023, that the amount of tax reported in his tax returns for all the tax years at issue here is accurate. (Doc. 77-21 at 1, 9–10). When specifically asked about the accuracy of the amount of tax he reported on his tax returns, Mr. Faro testified: "I have no way of challenging it. I'm not challenging it here." (Doc. 77-21 at 10). The Court therefore concludes that Mr. Faro's reliance on the questioning as to his 2011 and 2012 tax returns does not create any genuine issue of material fact as to the tax assessment of any of the tax years at issue. *See Liberty Lobby*, 477 U.S. at 252 (setting forth summary judgment standard).

Mr. Faro's second argument, which he made in short form, is that his 2015 tax return "was unsigned." (Doc. 89 at 11). Mr. Faro, however, has not disputed that the tax return on the record here is the one that was filed for him

8

electronically. (*See id.*; Doc. 77-4 at 3; Doc. 77-20). Moreover, as noted above, Mr. Faro admitted to the accuracy of this (and his other) tax returns during his deposition in the instant case. (*See* Doc. 77-4 at 3; Doc. 77-20; Doc. 77-21 at 9–10). In sum, Mr. Faro has failed to rebut the accuracy of the assessment for tax year 2015.

Mr. Faro has presented no other arguments as to the accuracy of the IRS's tax assessment. (*See* Doc. 89). Mr. Faro has also presented no dispute as to the interest assessed or, for tax years 2013 and 2015, the penalties assessed. (*See id.*). The Court accordingly will enter judgment for the United States.

The INTST-D computation printouts that the government has submitted show that, as of June 9, 2023, Mr. Faro owes the following amounts for the tax years at issue:

| Tax Year | Balance due as of June 9, 2023 |
|:---:|:---:|
| 2004 | 156,904.08 |
| 2005 | 17,520.46 |
| 2006 | 48,626.67 |
| 2007 | 21,619.84 |
| 2008 | 29,028.11 |
| 2009 | 145,766.09 |
| 2010 | 46,268.67 |
| 2011 | 7,870.45 |
| 2012 | 37,880.57 |
| 2013 | 12,342.87 |
| 2015 | 19,419.71 |
| **TOTAL** | **$ 543,247.52** |

(*See* Doc. 77-3). Before reducing the amount to judgment, however, the Court **DIRECTS** the government to submit a supplemental memorandum, with supporting documentation, clarifying:

    1.    <u>For tax years 2004, 2005, and 2006</u>:  The zero dollar ($0) balance reported as owed on the Form 4340 for tax years 2004, 2005, and 2006. (Doc. 77-2 at 9, 16, 24).

    2.    <u>For tax years 2004 and 2005</u>:  Whether the government seeks the taxes and interest included in its filings to this Court but which do not appear, or legibly appear, on the Form 4340: (a) $31,587.00 in taxes for tax year 2004; (b) $65,915.35 in interest for tax year 2004; and (c) $2,108.67 in interest for tax year 2005. (*Compare* Doc. 77 at 2–3; Doc. 77-1 at 4; *with* Doc. 77-2 at 2–9, 11–16).

    3.    <u>For all tax years at issue here</u>:  The interest and statutory additions that have accrued since June 9, 2023; the government's requested final judgment; and the basis for the final judgment amount.

The government's supplemental memorandum **is <u>limited to the foregoing three matters</u> and is due within 14 days of the date of this Order**.  Mr. Faro may file a response **<u>limited to the foregoing three matters</u> within 14 days of the filing of the government's supplemental memorandum**.

## II. Mr. Faro's affirmative defenses

Mr. Faro has asserted two affirmative defenses challenging the IRS's rejection of his offer in compromise. (Doc. 72 at 4–8; *see* Doc. 89 at 13–17; Doc. 92). As to neither defense, however, is there a genuine issue of material fact precluding judgment for the United States.

In June 2015, Mr. Faro offered to pay $35,000 for his tax liabilities for tax years 2004 through 2013 (along with tax year 1999). (Doc. 77-7 at 3, 7; *see* Doc. 77-8 at 3).[4] In December 2015, the IRS rejected the $35,000 offer stating, "We have determined that acceptance of your offer would have a negative impact on compliance by the general public." (Doc. 77-8 at 3; *see* Doc. 72 at 41). The IRS Appeals Office upheld this rejection in April 2016 "on the basis that acceptance of [the] offer would not be appropriate under public policy grounds," stating that "[w]e have determined that acceptance of your offer would have a negative impact on compliance by the general public." (Doc. 95-1 at 2).

Mr. Faro's first affirmative defense asserts that the IRS's rejection of his offer in compromise was contrary to the law and public policy. (Doc. 72 at 4–7). Even assuming *arguendo* that Mr. Faro's challenge is judicially reviewable here,[5] Mr. Faro has failed to present a developed argument that the IRS abused its discretion

---

[4] Mr. Faro had previously submitted other offers in compromise for lesser amounts. (*See, e.g.,* Doc. 72 at 26–39; Doc. 77-7 at 1–5).

[5] (*Compare* Doc. 77 at 11-14; Doc. 91 at 10-11; *with* Doc. 89 at 14-16).

11

or otherwise erred in rejecting his offer. (*See* Doc. 89 at 14–17; Doc. 92).[6] Because Mr. Faro has failed to develop this asserted defense, the Court grants the government's motion for summary judgment and denies Mr. Faro's cross-motion for summary judgment with respect to Mr. Faro's first affirmative defense. *See Celotex Corp.*, 477 U.S. at 322 ("[T]he plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.").

Mr. Faro's second affirmative defense is that the IRS discriminated against him based on his professional status as an attorney when it rejected his offer in compromise. (Doc. 72 at 7–8). Mr. Faro points to the affidavit of Michael Vilardi, a former IRS enrolled agent who represented Mr. Faro during the offer-in-compromise period. (Doc. 89 at 14; Doc. 63-1). In his affidavit, Mr. Vilardi expressed his belief that the rejection of Mr. Faro's offer was contrary to the IRS's policy and regulations and stated that an IRS official had "acknowledged that the

---

[6] Mr. Faro broadly asserts that the IRS abused its discretion in rejecting his offer and then, in one paragraph, argues that the IRS abused its discretion because (i) his 2017 bankruptcy established that he lacked the resources to pay his tax liabilities, and (ii) his "permanent spinal injuries (2018 & 2023) rendered him disabled and incapable of earning a living." (Doc. 89 at 13–17 & n.2). Both the 2017 bankruptcy and "permanent spinal injuries (2018 & 2023)" to which Mr. Faro points occurred after the IRS considered his offer in compromise in 2015 and 2016. (*See id.* at 17 & n.2 (citing 2017 bankruptcy proceeding); Doc. 77-8 at 3; Doc. 95-1 at 2). Mr. Faro, moreover, has failed to develop that the IRS abused its discretion with respect to these (or other) considerations when it rejected his offer. (Docs. 89, 92).

primary reason for the rejection . . . was [Mr. Faro's] profession (attorney status)." (Doc. 63-1 at 5).

But even accepting this fact in the light most favorable to Mr. Faro—i.e., that Mr. Faro's professional status was the primary reason for the IRS rejecting his offer—Mr. Faro has failed to develop that the IRS unlawfully discriminated against him or to dispute that the IRS had a rational basis for rejecting his offer. (Doc. 89 at 13-14; *see* Doc. 77 at 18). Accordingly, the Court grants the government's motion for summary judgment and denies Mr. Faro's cross-motion for summary judgment with respect to the second affirmative defense. *See Celotex Corp.*, 477 U.S. at 322 (addressing summary judgment standard).

## CONCLUSION

For the foregoing reasons:

1. The United States' motion for summary judgment (Doc. 77) is **GRANTED in part**; the Court will enter judgment for the United States but reserves its decision on the amount of the judgment until the parties file their supplemental memoranda ordered herein.

2. Mr. Faro's cross-motion for summary judgment (Doc. 89) is **DENIED**.

3. The parties are **DIRECTED** to submit supplemental briefing **limited to the three matters set forth in this Order**. (*See* p.10, *supra*). The government's supplemental memorandum **is due within 14 days of the date of this Order**. Mr. Faro may file a response **within 14 days of the filing of the**

**government's supplemental memorandum**. No extensions will be granted absent a showing of extraordinary circumstances.

**ORDERED** at Fort Myers, Florida on January 22, 2024.

_____
JOHN L. BADALAMENTI
UNITED STATES DISTRICT JUDGE