UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

UNITED STATES OF AMERICA,

    Plaintiff,

v.

                                                    Case No. 2:20-cv-769-JLB-NPM

JOHN H. FARO,

    Defendant.
_____/

## ORDER

      The United States brought this action against John H. Faro to collect unpaid federal income tax liabilities for 2004–2013 and 2015.  (*See* Doc. 8 at ¶¶ 1, 8).  This Court previously denied Mr. Faro's summary judgment motion and granted the United States' summary judgment motion in part.  (*See* Doc. 101).  After a review of the government's supplemental memoranda and supporting documents (Docs. 103 and 107 and attachments thereto) and Mr. Faro's response (Doc. 110), the Court determines that judgment will be entered for the United States against Mr. Faro for outstanding federal income tax liabilities for the tax years at issue in the amount of $542,930.76 as of February 5, 2024, plus statutory additions and interest that continue to accrue.

## BACKGROUND

      For tax years 2004–2013 and 2015, Mr. Faro filed tax returns identifying his occupation as an attorney and reporting that he owed federal income taxes.  (*See* Doc.

101 at 1–2 & n.1 (citing tax returns)). In the Court's previous Order, the Court observed that Mr. Faro in his deposition had "agreed that the amount of tax he reported on his tax returns was accurate, that he had 'no way of challenging it,' and that he is 'not challenging it here.'" (*Id.* at 2 (quoting Doc. 77-21 at 10)). During his deposition, Mr. Faro testified as follows:

> Q   And just to be clear for the record, I want to make sure that we're very clear about this. Exhibits 1 through 11, which are copies of your tax returns for the tax years at issue, you confirm that your signature appears on all of those --
> A   Yes.
> Q   -- tax returns?
> A   And my wife's on two of the years.
> Q   Okay. And that for all of the tax years at issue, the amount of the tax that's reported is accurate?
> A   *Yes.*
> Q   Okay.
> A   *I have no way of challenging it. I'm not challenging it here. I just challenged in the admissions that I couldn't attest to the accuracy because I did not prepare the returns.*
> Q   But you don't have anything to dispute --
> A   No.
> Q   -- its accuracy?
> A   *I said no, I don't.*

(Doc. 77-21 at 9–10) (emphases added). Mr. Faro also admitted in his response to requests for admissions that he has not fully paid his income taxes. (*See* Doc. 101 at 2 & n.2 (citing Doc. 77-6 at 2–11)).

In its previous Order, the Court denied Mr. Faro's summary judgment motion challenging the IRS's rejection of his "offer in compromise" on the taxes he owed. (*Id.* at 3, 11–13). The Court granted the government's motion for summary judgment in part. (*Id.* at 4–10, 13–14). As to three of the tax years (2004, 2005, and 2006), the Court directed the government to address in supplemental briefing (i) the zero dollar

2

($0) balance on the Form 4340, when the INTST-D computation printouts showed Mr. Faro owed an outstanding balance for these tax years; and (ii) whether the government sought to collect three amounts ($31,587.00 in taxes for tax year 2004; $65,915.35 in interest for tax year 2004; and $2,108.67 in interest for tax year 2005) that had been included in the government's filings to this Court but which do not appear, or legibly appear, on the Form 4340.  (*Id.* at 9–10).  The Court also directed the government to provide an updated final judgment amount including the interest and statutory additions that had accrued.  (*Id.* at 10).  The Court provided Mr. Faro with an opportunity to respond to the government's supplemental filing.  (*Id.* at 10, 13–14).

The government has submitted supplemental memoranda addressing the matters identified in the Court's previous order.  (Docs. 103, 107).  Mr. Faro has responded.  (Doc. 110).

## DISCUSSION

The Court set forth the governing standards in its previous Order.  (*See* Doc. 101 at 3–4).  To recap, "[a]n 'assessment' amounts to an IRS determination that a taxpayer owes the Federal Government a certain amount of unpaid taxes," and it "is entitled to a legal presumption of correctness."  *United States v. Fior D'Italia, Inc.*, 536 U.S. 238, 242 (2002).  When the government seeks to reduce an assessment to judgment, "the [g]overnment must first prove that the assessment was properly made. . . .[If it does so,] the taxpayer must then prove that the assessment is erroneous in order to prevail."  *United States v. Stein*, 881 F.3d 853, 855 (11th Cir.

2018) (en banc) (quoting *United States v. White*, 466 F.3d 1241, 1248 (11th Cir. 2006)) (internal quotation marks omitted).

## I. Tax years 2004, 2005, and 2006

The government may submit a Form 4340 to establish the presumption that the assessment was properly made. *White*, 466 F.3d at 1248. In *White*, the Eleventh Circuit addressed a zero-dollar ($0) balance on the Form 4340. *Id.* at 1249. In that case, the computer program that completed the form zeroed out the balance based on an erroneous assumption that the statute of limitations had run; the program had not recognized that an automatic stay had been in place. *Id.* The Eleventh Circuit rejected that the taxpayer had rebutted the Form 4340's presumption of validity, because the "final balance is little more than a typographical error" and the taxpayer had "offered no evidence to suggest that the preceding entries themselves, listing the unpaid taxes, are incorrect." *Id.*

Here, the government has addressed the zero-dollar ($0) balance on the Form 4340 for tax years 2004, 2005, and 2006 through the declaration of Steven Sillars, an IRS Revenue Officer. (*See* Doc. 103 at 3–5; Doc. 103-1). Revenue Officer Sillars attests that Mr. Faro and his wife filed joint tax returns for these tax years. (Doc. 103-1 at ¶ 12; *see* Doc. 77-2 at 9, 16, 24). After Mr. Faro's ex-wife submitted an innocent spouse claim, the IRS separated the accounts in its computer system. (Doc. 103-1 at ¶ 12). According to Revenue Officer Sillars, entries made on the Form 4340s reflect the creation of the separate accounts for Mr. Faro and his ex-wife. (*Id.* at ¶ 13 (citing Doc. 77-2 at 6–7, 14–15, 22 and pointing to code 400

4

"Account Transfer Out" and code 402 "Account Transfer In")).  The Form 4340s that had been submitted here are for the joint account, "which is why [they] reflect a zero balance."  (*Id.* at ¶ 13 (citing Doc. 77-2 at 9, 16, 24)).

To show Mr. Faro's separate account, Revenue Officer Sillars provided the "Account Transcript" that he accessed through the "Employer User Portal."  (*Id.* at ¶¶ 6–9, 14; Doc. 103-2).  Revenue Officer Sillars states that the Account Transcripts are "true and accurate copies of records made at or near the time of the occurrence of the matters and transactions set forth therein . . . , including assessments of personal income tax liabilities, penalties, interest, and payments" and that the IRS's regular practice is "to make and maintain these records."  (Doc. 103-1 at ¶ 7).  Revenue Officer Sillar further attests that he has submitted true and correct copies of the Account Transcripts for Mr. Faro and that they "reflect the tax liabilities assessed and owed solely by [Mr.] Faro."  (*Id.* at ¶¶ 8, 14).  The Account Transcripts that Revenue Officer Sillars has submitted show that Mr. Faro has outstanding tax liabilities for 2004, 2005, and 2006, rather than a zero-dollar balance, and that the IRS has not written off these liabilities.  (*Id.* at ¶ 14; Doc. 103-2 at 2, 7, 11).

The Account Transcripts also list the entries for taxes, interest, and penalties assessed by date, including the three specific amounts assessed that did not appear, or legibly appear, on the Form 4340 for tax years 2004 and 2005.  (Doc. 103-1 at ¶ 9; Doc. 103-2; *see* Doc. 101 at 10 (citing Doc. 77-2 at 2–9, 11–16)).  Specifically, the Account Transcripts show:  (a) $31,587.00 in additional tax assessed by examination for tax year 2004; (b) $65,915.35 in interest charged for a late payment for tax year

5

2004; and (c) $2,108.67 in interest charged for a late payment for tax year 2005. (Doc. 103-2 at 4, 5, 9; *see* Doc. 103-1 at ¶ 9).

In his response, Mr. Faro does not address, and therefore has not disputed, Revenue Officer Sillars' explanation for the zero-dollar balance on the Form 4340s for tax years 2004, 2005, and 2006. (*See* Doc. 110). Nor does Mr. Faro contest Revenue Officer Sillars' reliance on the Account Transcripts, their non-zero balance, or any of the preceding entries therein, including the three specific amounts discussed above. (*See id.*)

The Court accordingly determines that the government's tax assessments, reflected here on the Form 4340s and Accounts Transcripts for tax years 2004, 2005, and 2006 taken together, are entitled to a presumption of validity. *See White*, 466 F.3d at 1248–49 (applying presumption of correctness to Form 4340 notwithstanding its zero-dollar final balance); *see also United States v. Louisville*, No. 8:20-cv-559-VMC-CPT, 2021 WL 2580301, at \*6 (M.D. Fla. Mar. 2, 2021) (relying on IRS Agent's declaration and accompanying Account Transcripts, because "the Account Transcripts . . . contain substantially the same information as that reflected in the Form 4340s (if not more), and other courts have found declarations like [the Agent's], along with account transcripts, to serve as a satisfactory substitute for the [F]orm [4340]") (collecting cases), *report and recommendation adopted*, 2021 WL 2580211 (M.D. Fla. Mar. 24, 2021); *United States v. Bennett*, No. 8:09-cv-1952-T-27TGW, 2011 WL 7090744, at \*4–5 (M.D. Fla. June 7, 2011) (relying on Revenue Officer's declaration and account transcripts), *appeal on other grounds*

*aff'd*, 448 F. App'x 991 (11th Cir. 2011); *United States v. Henry*, No. 8:09-cv-001963-JDW-TBM, 2010 WL 299249, at *2 (M.D. Fla. Jan. 21, 2010) (same).  Because Mr. Faro has not pointed to or offered any evidence to rebut the accuracy of the Form 4340s or Account Transcripts for tax years 2004, 2005, and 2006 (*see* Doc. 110), he has not "prove[n] that the assessment is erroneous."  *White*, 466 F.3d at 1248; *see id.* at 1248–49 (concluding taxpayer had not rebutted the Form 4340's presumption of validity, where zero-dollar final balance was "little more than a typographical error" and taxpayer had "offered no evidence to suggest that the preceding entries themselves, listing the unpaid taxes, are incorrect").

## II. Computation of the outstanding balance due for tax years 2004–2013 and 2015

The government has also provided an updated balance that Mr. Faro owes on his unpaid federal income tax liabilities for all the tax years at issue (2004–2013 and 2015).  (Doc. 107; *see* Doc. 101 at 10).  For tax years 2013 and 2015, Revenue Office Sillars used the INTST-D module to compute the balance due.  (Doc. 107-1 at ¶¶ 7–8; Doc. 107-2).  For tax years 2004–2012, the penalties and interest on penalties were discharged in bankruptcy.  (Doc. 107-1 at ¶ 9; *see* Doc. 101 at 5 n.3).  For this reason, Revenue Officer Sillars computed the balance due for these tax years using Excel spreadsheets.  (Doc. 107-1 at ¶¶ 9–10; Doc. 107-3).  Adding the balances due for each tax year, Revenue Officer Sillars calculated that, as of February 5, 2024, the total balance that Mr. Faro owes on his federal income tax liabilities for tax years 2004–2013 and 2015 is $542,930.76, plus statutory additions

and interest that continue to accrue until paid in full. (Doc. 107-1 at ¶ 11; *see* Doc. 107-2; Doc. 107-3).

Mr. Faro has not disputed Revenue Officer Sillars' computation of the updated balance owed. (*See* Doc. 110). Accordingly, the Court accepts—as undisputed—the government's computation of the outstanding balance due as of February 5, 2024. *See, e.g., United States v. Grant*, No. 00-8986-CIV-JORDAN, 2003 WL 21152954, at *3 (S.D. Fla. Mar. 31, 2003) (concluding taxpayers had "failed to satisfy their burden of showing that the amounts are erroneous" in the IRS employee's declaration computing the interest and penalties, where the taxpayers had "offered no alternative calculation of the amounts in [that] . . . declaration").

## III. Mr. Faro's Article III standing argument

Rather than contesting Revenue Officer Sillars' computation of the outstanding balance due, Mr. Faro relies on Revenue Officer Sillars' updated computation to argue that the IRS lacked Article III standing when it sued Mr. Faro. (*See* Doc. 110 at 1–5 & n.1 (citing Docs. 107-1, 107-2)). In making this argument, Mr. Faro contends that (i) Revenue Officer Sillars' declaration shows that the IRS's "assessment [was] not computed until 2024" and was therefore "inchoate" when the government filed the Complaint against him in 2020; (ii) as a result, there was not a "concrete injury" and the IRS lacked Article III standing to sue him for unpaid taxes when the Complaint was filed. (*See id.* at 1–3). Similarly, Mr. Faro suggests that Revenue Officer Sillars' declaration shows that the IRS's

8

"initial . . . assessment was inaccurate, incomplete and inflated; and, had to be adjusted" and therefore the assessment asserted in the Complaint was "inchoate." (*Id.* at 4–5 & n.1) (formatting omitted). Mr. Faro, however, is mistaken.

The government filed this suit against Mr. Faro in 2020, and the Amended Complaint filed in 2021 (the operative "Complaint") alleged the amount of taxes, interest, and penalties that had been assessed against Mr. Faro for each tax year (2004–2013 and 2015). (Doc. 8 at ¶ 8). The Complaint included an itemized chart specifying the alleged assessments by type (tax, interest, or penalty) and by assessment date. (*Id.*). For all of the tax years at issue here, the Complaint alleged that the taxes, interest, and penalties had all been assessed by November 2016—meaning that the alleged assessments had all been made *before* this case was filed in 2020. (*Id.*). The Account Transcripts similarly show that the taxes, interest, and penalties had all been assessed by November 2016. (*See* Doc. 103-2 at 1–39). Thus, Mr. Faro's argument that the IRS's assessment was "inchoate" and did not constitute a concrete injury when the government filed the Complaint is unfounded. (*See* Doc. 110 at 2).

Moreover, the Complaint sought to collect interest and statutory additions that continue to accrue until the tax liabilities are paid in full. (Doc. 8 at ¶ 22). Revenue Officer Sillars' provided an updated computation of the balance due in 2024 (Doc. 107-1; Doc. 107-2; Doc. 107-3), and as discussed above, Mr. Faro has not contested that computation. See Part II, *supra*. Mr. Faro accordingly has not established that the government lacked Article III standing to bring this suit.

9

## IV. Mr. Faro's remaining arguments related to the Court's previous Order

Mr. Faro suggests that the government and, in turn, this Court have misread his deposition testimony concerning the accuracy of his tax returns. (Doc. 110 at 3–4 (citing Doc. 101 at 8)). Pointing to a portion of his deposition testimony, Mr. Faro argues that he did not admit to the accuracy of his tax returns but rather professed his ignorance thereof. (*Id.*). Mr. Faro further maintains that he "cannot attest to the accuracy of his tax returns, which were prepared by a tax preparer," and that none of the tax preparers were deposed in this case. (*Id.* at 3).

As an initial matter, the Court finds that Mr. Faro's reading of his deposition testimony (more fully set forth on page 2, *supra*) is unreasonable. *See, e.g., Baxter v. Roberts*, 54 F.4th 1241, 1258 (11th Cir. 2022) ("A nonmovant who wants [the Court] to interpret the record in a way that would preclude summary judgment must explain how such an interpretation is reasonable."). Regardless, even if Mr. Faro had not admitted to the accuracy of his tax returns in his deposition, Mr. Faro in his submissions here (Doc. 89; Doc. 110) has not shown that his tax liabilities would be lower or pointed to any record evidence to rebut the accuracy of the IRS's assessment. (*See* Doc. 101 at 6–9); *White*, 466 F.3d at 1248 ("Once the Form [4340] is provided, the taxpayer must then *prove* that the assessment is erroneous in order to prevail.") (emphasis added).

Finally, Mr. Faro continues to maintain that the IRS erred in rejecting his offer in compromise. (Doc. 110 at 5–6 & n.2).[1] Mr. Faro's complaint here appears to be that the offer in compromise negotiated with the IRS was rejected because the IRS insisted on the "payment of [the] total tax assessment." (*Id.* at 6) (formatting omitted). Although Mr. Faro asserts that the IRS's insistence on total payment was "unacceptable," Mr. Faro has not identified or established any error in the IRS's rejection of his offer in compromise. (*See id.* at 5–6).

In sum, Mr. Faro has not "prove[n] that the [IRS's] assessment is erroneous." *White*, 466 F.3d at 1248. With no dispute from Mr. Faro (Doc. 110) as to the accuracy of Revenue Officer Sillars' computation (Doc. 107-1; Doc. 107-2; Doc. 107-3), the Court determines that Mr. Faro's total balance owed on his federal income tax liabilities for tax years 2004–2013 and 2015 is $542,930.76 as of February 5, 2024, plus statutory additions and interest that continue to accrue. The Court will enter judgment for the United States accordingly.

## CONCLUSION

Based on the foregoing, it is ordered that:

1. The Clerk of Court is DIRECTED to enter judgment for the United States against John H. Faro for outstanding federal income tax liabilities for tax years 2004–2013 and 2015 in the amount of $542,930.76 as of February 5, 2024, plus statutory additions and interest that continue to accrue, and

---

[1] The Court addressed Mr. Faro's previous arguments as to the rejection of his offer in compromise in its earlier Order. (*See* Doc. 101 at 11–13).

2. The Clerk of Court is further **DIRECTED** to close this case.

**ORDERED** in Fort Myers, Florida on August 1, 2024.

_____
JOHN L. BADALAMENTI
UNITED STATES DISTRICT JUDGE